IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SHABBAR RAFIQ, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:12-cv-149 |
| | § | |
| BANK OF AMERICA, N.A., and | § | |
| FEDERAL HOME LOAN MORTGAGE | § | |
| CORPORATION, | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending before the court is Defendants Bank of American, N.A.'s and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment (Dkt. 12); Plaintiff's Response (Dkt. 13); Defendants' Reply (Dkt. 16); and Plaintiff's Sur-Reply (Dkt. 18). The court held a final pretrial conference for this case on August 5, 2013. Plaintiff asked for leave of court to supplement his response to Defendants' Motion for Summary Judgment. The court granted Plaintiff's motion for leave and therefore also considers Plaintiff's Supplemental Response (Dkt. 38), Defendants' Supplemental Reply (Dkt. 39), and Plaintiff's Supplemental Sur-Reply (Dkt. 43). Also pending before the court is Defendants' Amended Motion to Exclude Expert (Dkt. 25), Plaintiff's Response (Dkt. 27), and Defendants' Reply (Dkt. 28) as well as both parties' motions in limine (Dkts. 31, 32).

For the reasons set forth herein, Defendants' Motion for Summary Judgment (Dkt. 12) is **GRANTED**.[1] Accordingly, Defendants' Amended Motion to Exclude Expert (Dkt. 25) and the parties' motions in limine (Dkts. 31, 32) are **DENIED as MOOT**.

---

[1] While the court has reviewed and considered the evidence put forth by Plaintiff in his supplemental response, the court does not address any evidentiary issues related to the supplemental evidence as no objection has been filed by Defendant. However, as explained

### I.     JURISDICTION AND VENUE

Jurisdiction is proper in this court under 28 U.S.C. §§ 1332(a)(1) and 1367. Venue is proper under 28 U.S.C. § 1391(b)(2).

### II.    BACKGROUND

In 2006, Plaintiff Shabbar Rafiq purchased the property at 912 Azalia Drive, Lewisville, Texas, with a purchase-money mortgage from America's Wholesale Lender (AWL). The Deed of Trust names Mortgage Electronic Registration Systems (MERS) as its beneficiary "acting solely as a nominee for Lender and Lender's successors and assigns."[2] AWL is an assumed name of Countrywide Home Loans, Inc. (CHL).[3] Bank of America (BOA) is the successor-in-interest to CHL.[4]

Defendant alleges that Plaintiff first became delinquent on his mortgage in May 2007. Consequently, the parties entered into a modification agreement on September 25, 2007, that lowered the amount of Plaintiff's monthly mortgage payments.[5] The modification agreement made clear however, that "the Note and Security Instrument [] remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof."[6] Defendant contends that Plaintiff failed to adhere to the modification agreement when he again fell behind on his payments in May 2009.

Plaintiff alleges that in September 2010 he "experienced some extenuating family circumstances,"[7] but that he was not behind on his mortgage payments. Nonetheless, Plaintiff

---

below, the supplemental evidence does not create a genuine issue of material fact as to any of Plaintiff's claims under the facts of this case.
[2] Dkt. 13-1, Deed of Trust, ¶ (E).
[3] Dkt. 12-2, Pajer Decl. ¶ 4.
[4] Dkt. 12-2, Pajer Decl. ¶ 4.
[5] Dkt. 12-6.
[6] Dkt. 12-6.
[7] Am. Compl. ¶ 8.

asserts he contacted BOA at that time for assistance with his payments. He contends that a representative of BOA, Tonya, told him that he did not qualify for a loan modification program because he was not behind on his payments. Plaintiff further contends that Tonya instructed him to stop making payments on his loan and to apply for a loan modification after he had missed three payments. Plaintiff claims he called Bank of America a second time and spoke with a different representative, Sean. Plaintiff alleges that Sean told him that to qualify for a loan modification he had to be at least three monthly payments behind. Plaintiff then stopped making his mortgage payments and submitted a loan modification application. Defendant alleges that Plaintiff made his last full mortgage payment on November 15, 2010, which brought his mortgage account current through July 2010.

Bank of America sent Plaintiff a letter on November 16, 2010 indicating that his account was in "serious default because the required payments [had] not been made."[8] The letter indicated the amount needed to bring the account current and instructed Plaintiff to cure the default by December 16, 2010, or the Note would be "accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time."[9] The letter makes clear that "the failure to cure the default may result in the foreclosure and sale of your property."[10] On November 30, 2010, Bank of America sent Plaintiff a second letter indicating that his application for a loan modification was denied.[11] The letter states that Bank of America "encourage[s] you to continue making your payments and keep your loan in good standing. Unfortunately, there is no guarantee that making your payments will help

---

[8] Dkt. 12-7.
[9] Dkt. 12-7.
[10] Dkt. 12-7.
[11] Dkt. 13-5.

you qualify for a program that will resolve your situation, but not making any payments will increase your chance of foreclosure."[12]

Plaintiff alleges that in January 2011, Defendant BOA informed him that his application for a loan modification was denied. He contacted BOA and spoke with Tiffany, who advised him to complete another modification application. Although Plaintiff alleges in his complaint that after this conversation he "continued to make the payments pursuant to the trial payment agreement,"[13] the evidence submitted by Plaintiff shows that the last payment submitted to Bank of America from Plaintiff for any amount was posted to his account in December 2010.[14] Other evidence submitted by Plaintiff shows that on February 25, 2011, a note was put in his account record that Bank of America had not received all of the requested documents and information required to review his loan for a modification.[15] Plaintiff alleges in his complaint that he "called frequently over the next several months to check on the status of his loan modification"[16] but there is no record in the evidence submitted by Plaintiff of any calls during this time.

Defendant retained the law firm of Barrett Daffin Frappier Turner and Engel, LLP (BDFTE) to manage the foreclosure proceedings on the property. BDFTE sent Plaintiff a notification that a foreclosure sale was scheduled on April 7, 2011. The foreclosure sale took place on May 3, 2011. Defendant Federal Home Loan Mortgage Corporation (Freddie Mac) was the successful bidder at the foreclosure sale.

Plaintiff's amended complaint alleges claims for (1) breach of contract; (2) anticipatory breach of contract; (3) violations of the Texas Finance Code; (4) negligent misrepresentation and

---

[12] Dkt. 13-5.
[13] Am. Compl. ¶ 4.
[14] Dkt. 13-8
[15] Dkt. 13-2, App. 0035.
[16] Am. Compl. ¶ 13.

gross negligence; (5) suit to quiet title and trespass to try title; (6) declaratory judgment; (7) accounting; and (8) malice.

### III.   LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."[17] Substantive law determines which facts are material.[18] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19] "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[20] Therefore, in deciding whether to grant a motion for summary judgment, the court must consider whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[21] The court must construe all facts and inferences in the light most favorable to the nonmoving party.[22] When "the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case."[23] Once the movant has met this burden, the burden shifts to the nonmovant to offer evidence that would show there is a genuine issue of material fact with respect to the claims raised. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and "may not rely upon the mere allegations or denials of his pleading."[24]

---

[17] FED. R. CIV. P. 56(a) (emphasis added).
[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[19] *Id.*
[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[21] *Anderson*, 477 U.S. at 250.
[22] *See Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000).
[23] *Payne v. Sw. Bell Tel., L.P.*, 562 F. Supp. 2d 780, 783 (E.D. Tex. 2005).
[24] *Id.* at 322 n. 3; *see also* FED. R. CIV. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by

"Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden."[25] The moving party must look beyond the pleadings and designate specific evidence in the record to show that there is a genuine issue for trial.[26] The citations must be specific because the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact.[27] Summary judgment is appropriate when the evidentiary material of record, when reduced to admissible evidence, would be insufficient to permit the nonmoving party to carry its burden of proof.[28]

## IV.   ANALYSIS

### a.  Breach of Contract

To prevail on a breach of contract claim, a plaintiff must prove: "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach."[29] Here, the parties do not dispute the existence of a valid contract arising out of the Note and Deed of Trust. Defendant argues that Plaintiff cannot establish that he complied with his obligations because he failed to make his required monthly payments and therefore cannot maintain a claim of breach against BOA.[30] The court agrees.[31] Plaintiff does not dispute that he defaulted on his mortgage obligations.[32] However, because

---

Rule 56(c), the court may grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it.").

[25] *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (internal quotation marks omitted).

[26] *See Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

[27] EAST. DIST. TEX. LOCAL R. CV-56(c).

[28] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[29] *Oliphant Fin., LLC v. Patton*, No. 05-17-01731, 2010 WL 936688, at *3 (Tex. App.—Dallas Mar. 17, 2010, pet. denied) (mem. op.); *see also Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

[30] Mot. Summ. J. ¶ 12.

[31] *See Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 341 (5th Cir. 2012) ("Under well-established principles of Texas contract law, that material breach would normally prevent [the

this type of breach by Plaintiff was specifically contemplated by the terms of the contract, it is unlikely that the parties intended Plaintiff's failure to make timely payments to be a material breach that would excuse Defendant from adhering to the foreclosure terms as set forth in the contract.[33] Therefore, the court considers the evidence put forth to support Plaintiff's claim.

### i.  Texas Property Code § 51.002

Plaintiff first alleges that Defendant "never gave Plaintiff[] a notice of default, notice of intent to accelerate, or the right to cure and reinstate the Note" as required by the Texas Property Code. The Deed of Trust is "governed by federal law and the law of the jurisdiction in which the Property is located."[34] Section 51.002(d) of the Texas Property Code requires the mortgage servicer of the debt to "serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)." Texas common law also requires that the mortgagor be notified of the mortgagee's intent to accelerate the debt.[35] Section 51.002(e) of the Texas Property Code provides: "[s]ervice of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address."

---

plaintiffs] from maintaining a breach-of-contract claim." (citing *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990))).

[32] *See, e.g.*  Am. Compl. ¶ 10; Resp. 4; Pl.'s Sur-Reply 1. While Plaintiff contends that he is only in default as a result of Defendants' actions, it is undisputed that Plaintiff did default on his mortgage payments.

[33] *See Sinclair v. Donovan*, No. 1:11-cv-00010, 2011 U.S. Dist. LEXIS 128220, at *27 (S.D. Ohio, Nov. 4, 2011) ("[I]t indeed would be an absurd result if the Lender Defendants were allowed to ignore the contract terms drafted to govern their post-default conduct on the grounds that the mortgagors have defaulted.").

[34] Dkt. 12-4, Deed of Trust ¶ 16.

[35] *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982).

Defendant produced a letter sent to Plaintiff on November 16, 2010 indicating that Plaintiff's loan "is in serious default because the required payments have not been made."[36] The letter goes on to state the amount due to cure the default ($5,021.56) and the date the default must be cured to avoid acceleration and foreclosure (December 16, 2010). [37] The letter was sent via certified mail number 7113 8257 1474 7765 3200. Although the letter appears to be returned and marked as "unclaimed," Defendant need not prove that Plaintiff actually received the notice—constructive notice is all that is required.[38]

Defendant also produced a copy of a notice sent by Defendants' foreclosure counsel, BDFTE, sent via certified mail number 7160 9668 9670 5454 5677, to Plaintiff on April 7, 2011.[39] This letter explains that the mortgagee has opted to accelerate the debt and that a foreclosure sale is scheduled to take place on May 3, 2011—twenty-seven days after the letter was sent. This letter also states that Plaintiff has the right to reinstate the loan as provided by the terms of the Deed of Trust and the right to bring a court action "to assert the non-existence of a default or any other defense to acceleration and foreclosure which they may have." Defendant complied with all of its obligations under Section 51.002 of the Texas Property Code, and there is no genuine dispute as to a material fact.

### ii.  Breach of Alleged Unilateral Contract

Plaintiff next alleges that "Defendants offered and Plaintiff accepted a trial payment plan"[40] and that "Plaintiff relied on Defendants' representations and promises . . . to his detriment."[41] Under Texas law, "a unilateral contract is created by the promisor promising a

---

[36] Dkt. 12-7.
[37] *Id.*
[38] *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 720 (Tex. App.—Dallas 1995, no writ).
[39] Dkt. 12-9.
[40] Am. Compl. ¶ 17.
[41] Am. Compl. ¶ 17.

benefit if the promisee performs" and becomes enforceable when the promisee performs.[42] Here, Plaintiff argues that Defendant promised to modify the loan and forbear from foreclosure if Plaintiff made timely payments under a trial payment plan. Plaintiff alleges that he performed under the agreement, but that Defendant nevertheless proceeded with foreclosure.

Any contract modifying the Note and Deed of Trust is subject to the statute of frauds and must have been in writing to be enforced.[43] Because this alleged loan modification was oral, it is unenforceable. Neither party has put forth any evidence that this agreement was reduced to writing, therefore no genuine issue of material fact exists as to this claim.[44]

Plaintiff raises equity, promissory estoppel, and partial performance in response to Defendants' statute of frauds argument. However, Defendants' November 30, 2010, letter to Plaintiff is unmistakable in its explanation of the consequences if Plaintiff failed to make his mortgage payments.[45] It reads: "We encourage you to continue making your payments and keep your loan in good standing. Unfortunately, there is no guarantee that making your payments will help you qualify for a program that will resolve your situation, but not making any payments will increase your chance of foreclosure." The letter also informs Plaintiff that he was not eligible for a loan modification. This document was produced by Plaintiff, so it is undisputed that he had been informed—in writing—of the consequences of failing to make timely payments, and the court declines to apply any equitable doctrines to remove the purported unilateral contract from

---

[42] *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011) (quoting *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009)) (internal quotation marks omitted).

[43] TEX. BUS. & COM. CODE § 26.02(a)(2) & (b).

[44] Plaintiff has cited to records from Defendant (Dkt. 13-2, App. 0040) as evidence of the modification agreement. However, the notes in Plaintiff's account records are not sufficient to satisfy the requirements of the statute of frauds in this instance. Even if it were, the notes indicate only that three modified payments were authorized to be accepted for the months of February, March, and April 2010, and the loan history provided by Plaintiff (Dkt. 13-8, App. 0075) shows only two modified payments were made.

[45] Dkt. 13-5.

the requirements of the statute of frauds under these circumstances. As a result, Plaintiff has failed to put forth evidence to create a genuine dispute as to a material fact.

### iii.  Texas Business and Commerce Code §§ 1.201(20) & 9.102(c)

Plaintiff next argues that Defendant breached the contract by violating the requirement of good faith and fair dealing in the Texas Business and Commerce Code.[46] Section 1.201(20) of the Code defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Section 9.102(c) states that "Chapter 1 contains general definitions and principles of construction throughout this chapter." However, section 9.109(11) declares that Chapter Nine of the Texas Business and Commerce Code does not apply to "the creation of an interest in or lien on real property." Therefore, these two sections are inapplicable in this context, "(b)ecause the Deed of Trust places a lien on *real* property."[47] Moreover, "Texas law does not 'recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a special relationship marked by shared trust or an imbalance in bargaining power.'"[48] Plaintiff has not put forth any evidence that there was a special relationship in this case, therefore, no genuine dispute as to a material fact exists.

Accordingly, Defendants' motion for summary judgment on Plaintiff's breach of contract claim is **GRANTED**.

---

[46] Am. Compl. ¶ 21.

[47] *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App.—San Antonio 1998, no pet.) (emphasis in original); *see also* TEX. BUS. & COM. CODE § 3.104, cmt. 2 ("Article 3 is not meant to apply to contracts for. . . the sale or lease of real property or similar writings that may contain a promise to pay money.").

[48] *Watson v. Citimortgage*, 814 F. Supp. 2d 726, 731 (E.D. Tex. 2011) (citing *Coleman v. Bank of Am., N.A.*, No. 3-11-cv-0430-G-BD, 2011 WL 2516169, at *1 (N.D. Tex. May 27, 2011)).

### b.  Anticipatory Breach of Contract

An anticipatory breach of contract "is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance."[49] To establish a claim for anticipatory breach of contract, a plaintiff must show: "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party."[50] "An anticipatory repudiation of a contract may consist of either words or actions by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms."[51] But "the declaration of intent to abandon must be in positive and unconditional terms."[52] Oral modifications of contracts are unenforceable under the Texas statute of frauds.[53] Therefore, the only contract in existence in this case was the one created by the Note and Deed of Trust. Plaintiff has put forth no evidence that Defendant repudiated its obligations under the Note and Deed of Trust so there is no genuine dispute as to a material fact on this claim, and Defendants' motion for summary judgment on Plaintiff's anticipatory breach of contract claim is **GRANTED**.

### c.  Split of Note from Deed of Trust Theory

Plaintiff argues in numerous places throughout his complaint and his response to Defendants' motion that Defendant did not have a right to foreclose on his property because the assignment of the Deed of Trust from MERS to BAC Home Loans Servicing, LP[54] is unenforceable. Plaintiff bases this argument on two theories.

---

[49] *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).
[50] *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004).
[51] *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010).
[52] *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. Civ. App.—Austin 1951, no writ).
[53] TEX. BUS. & COM. CODE § 26.02(a)(2) & (b); *see also Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n*, No. 12-10307, 2013 WL 363118, at *1 (5th Cir. Jan. 30, 2013).
[54] Dkt. 12-5. BAC was the entity servicing Plaintiff's loan account on behalf of BOA.

Plaintiff's first theory is that MERS could not have assigned the Note to BAC, and its purported attempt to do so is invalid because MERS was only named as trustee in the Deed of Trust. Therefore, BAC did not have a right to foreclose. Plaintiff alleges in his petition that "[u]pon information and belief, MERS solely as nominee for AWL, assigned the *note and Deed of Trust* to Countrywide Home Loans, Inc."[55] However, there is no evidence that MERS ever purported to assign the Note. Plaintiff does not contest that Bank of America is the proper party to enforce the Note. MERS' assignment of rights under the Deed of Trust does not affect the Note. "Texas differentiates between enforcement of a note and foreclosure—the latter enforces a deed of trust, rather than the underlying note, and can be accomplished without judicial supervision."[56] Indeed, "[w]here a debt is secured by a note, which is, in turn, secured by a lien, the lien and the note constitute separate obligations."[57] It is irrelevant whether MERS attempted to assign the note because MERS did have the right to assign the Deed of Trust to BAC.

Plaintiff's second theory is that because MERS had no right to transfer the Note, its assignment of the Deed of Trust to BAC was invalid because it "split" the Note from the Deed of Trust. This argument is without merit. "The MERS system is merely an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans. The system is designed to track transfers and avoid recording and other transfer fees that are otherwise associated with the sale."[58] MERS is a mortgagee under the

---

[55] Am. Compl. ¶ 8 (emphasis added).

[56] *Martins v. BAC Home Loans Servicing, LP*, No. 12-20559, 2013 WL 1777487, at * 2 (5th Cir. 2013).

[57] *Id.* (citing *Aguero v. Ramirez*, 70 S.W. 3d 372, 374 (Tex. App.—Corpus Christi 2002, pet. denied) (internal quotation marks omitted).

[58] *Richardson v. CitiMortgage, Inc.*, No. 6:10-cv-119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010) (citing *In re: Mortgage Electronic Registration Systems (MERS) Litigation,* 659 F. Supp. 2d 1368 (U.S. Jud. Pan. Mult. Lit. 2009)) (internal citations omitted).

Texas Property Code,[59] which permits a mortgagee to authorize a mortgage servicer to conduct a foreclosure sale.[60] Here, MERS was the nominee for AWL *its successors and assigns*, and MERS had the authority to transfer the rights and interests in the Deed of Trust to BAC. "Foreclosure enforces the deed of trust, not the underlying note . . . [and] is an independent action against the collateral and may be conducted without judicial supervision."[61] "[N]othing in the Texas Property Code requires the mortgagee or mortgage servicer to provide the original note or deed of trust prior to seeking foreclosure."[62]

Plaintiff has failed to create a genuine dispute as to a material fact and has further failed to state a claim with respect to this theory. Therefore, Defendants' motion for summary judgment on this issue is **GRANTED**.

### d. Waiver of right to foreclose

Plaintiff next alleges that Defendant waived its right to foreclose.[63] Under Texas law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right."[64] The terms of the Deed of Trust make clear that the lender's delay in exercising any of its options does not result in a waiver of those rights.[65] Paragraph 12 of the Deed of Trust says,

> Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower. Any

---

[59] TEX. PROP. CODE § 51.001(4).
[60] TEX. PROP. CODE § 51.0025.
[61] *Ray v. Citimortgage, Inc.*, No. A-11-CA-441-SS, 2011 U.S. Dist. LEXIS 87568, at *8 (W.D. Tex. July 25, 2011) (citing *Slaughter v. Qualls*, 162 S.W.2d 672 (Tex. 1942)).
[62] *Truitt v. Resmae Mortg. Corp.*, No. 6:12-cv-617, 2013 WL 841465, at *3 (E.D. Tex. Jan. 8, 2013), *adopted by*, 2013 WL 842840 (E.D. Tex. Mar. 6, 2013).
[63] Pl.'s Resp. 13.
[64] *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).
[65] Dkt. 12-4 at ¶ 12.

> forbearance by Lender in exercising any right or remedy, including, without
> limitation, Lender's acceptance of payments from third persons, entities or
> Successors in Interest or Borrower or in amounts less than the amount then due,
> shall not be a waiver of or preclude the exercise of any right or remedy.

Plaintiff has not pointed to any evidence that Bank of America intentionally relinquished its right to foreclose or acted in a way inconsistent with claiming its right to foreclose.  Defendants' actions and statements in connection with Plaintiff's attempt to obtain a modification do not show intent to waive Defendants' contractual right to foreclose. Indeed, the evidence shows the opposite: Plaintiff was notified in writing that foreclosure was imminent.[66] Accordingly, Defendants' motion for summary judgment on Plaintiff's waiver claim is hereby **GRANTED**.

### e.   Unreasonable Collection Efforts

Under Texas law, "(u)nreasonable collection is an intentional tort."[67] "[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case."[68] Pleadings sufficient to support a claim for unreasonable collection efforts must contain facts that amount to "a course of harassment" by the defendant that "was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."[69] The standard for showing unreasonable collection efforts requires intent, not mere negligence. [70]

Plaintiff argues that Defendants' actions were unreasonable. Specifically, Plaintiff asserts that Defendant told him to stop making payments on his loan in order to qualify for a

---

[66] Dkts. 12-7, 13-5.

[67] *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.).

[68] *Id.*; *see also B.F. Jackson, Inc. v. Costar Realty Info., Inc.*, No. H-08-3244, 2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009).

[69] *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-cv-370, 2011 WL 676955, at *6 (E.D. Tex. Jan. 27, 2011), *adopted by*, 2011 WL 675392 (E.D. Tex. Feb. 16, 2011).

[70] *Bray v. Cadle Co.*, No. 4:09-cv-663, 2010 WL 4053794, at *19 (S.D. Tex. Oct. 14, 2010); s*ee also Thomas v. EMC Mortg. Corp*., 499 F. App'x 337, 342 (5th Cir. 2012) (noting the *Lathram* standard "has largely been disavowed by Texas courts"); *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010) ("[E]vidence of negligence is insufficient to support a cause of action for unreasonable collection efforts.").

modification, which Defendant promised to grant. Instead, Defendant foreclosed on Plaintiff's home after he stopped making payments. However, Plaintiff has also produced a letter from Bank of America dated November 30, 2010[71] that clearly states that while making timely payments may not permit Plaintiff to qualify for a modification program, failure to make timely payments increases the risk of foreclosure. In his Supplemental Response, Plaintiff points to the affidavits of several Bank of America employees indicating that Defendants' routine practice was to mislead and delay individuals seeking loan modifications under the HAMP program.[72] However, Plaintiff still has not met his burden to create a genuine issue of material fact on this claim.[73] The affidavits do not show that Defendant willfully, wantonly, or maliciously engaged in a course of harassment intended to inflict mental anguish and bodily harm to Plaintiff, and Plaintiff has not put forth any other evidence that would create a genuine issue of material fact.

Therefore, Defendants' motion for summary judgment on Plaintiff's unreasonable collection efforts claim is **GRANTED**.

### f.   Texas Debt Collection Act

The Texas Debt Collection Act (TDCA) prohibits debt collectors,[74] in debt collection,[75] from making fraudulent, deceptive, or misleading representations concerning "the character, extent, or amount of a consumer debt."[76] The TDCA also prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information

---

[71] Dkt. 13-5.

[72] *See* Dkt. 38.

[73] *See Watson v. Citimortgage*, 814 F. Supp. 2d 726, 734 (E.D. Tex. 2011).

[74] A debt collector is "a person who directly or indirectly engages in debt collection." TEX. FIN. CODE § 392.001(6).

[75] Debt collection is "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due to a creditor." TEX. FIN. CODE §392.001(5). A "consumer debt" is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." TEX. FIN. CODE § 392.001(2).

[76] TEX. FIN. CODE § 392.304(a)(8).

concerning a consumer."[77] A statement is a misrepresentation if the defendant made "a false or misleading assertion."[78] The TDCA applies to foreclosure actions because "foreclosure actions inevitably involve a debt collection aspect." [79] However, "[d]iscussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of the debt."[80]

Plaintiff alleges that Defendant imposed wrongful charges and failed to allow Plaintiff to pay only the arrearage instead of the full amount, and therefore misrepresented the extent of the debt.[81] Plaintiff further alleges in his response that Defendant misled Plaintiff into defaulting by promising a loan modification while Defendant was pursuing foreclosure.[82] Defendants respond that there is no genuine issue of material fact that Defendant made any misrepresentation to Plaintiff. As explained above, the terms of the Deed of Trust allow Defendant to pursue both modification and foreclosure simultaneously. Further, the evidence put forth by Plaintiff, especially the November 30, 2010 letter,[83] shows that Defendant notified Plaintiff of this possibility in writing when it denied Plaintiff's modification application. Plaintiff has not put forth any evidence that the fees and charges added to the amount owed were in violation of the terms of the Note and Deed of Trust. The affidavits put forth by Plaintiff in his Supplemental Response are not sufficient to create a genuine dispute as to a material fact about whether Defendant deceived Plaintiff into remaining in default. In this instance, Plaintiff has provided the evidence that conclusively shows that he was explicitly told that if he remained in default, he

---

[77] *Id.* at § 392.304(a)(19).
[78] *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010).
[79] *See Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 730-732 (N.D. Tex. 2011).
[80] *Watson v. Citimortgage*, No. 4:10-cv-707, 2012 WL 381205, at *7 (E.D. Tex. Feb. 3, 2012).
[81] Am. Compl. ¶ 35.
[82] Dkt. 13 at 21.
[83] Dkt. 13-5.

risked foreclosure.[84] Therefore, Defendants' motion for summary judgment on Plaintiff's TDCA claim is **GRANTED**.

### g.  Negligent Misrepresentation and Gross Negligence

Under Texas law, a claimant alleging negligent misrepresentation must show the following:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation.[85]

"[T]he misrepresentation at issue must be one of existing fact" rather than a promise of future conduct.[86] Representations with regard to future loan modifications and foreclosure (or forbearance from foreclosure) "constitute promises of future action rather than representations of existing fact" and cannot support a negligent misrepresentation claim.[87]

Plaintiff contends that Defendants' representations that it would not foreclose while it considered Plaintiff's loan modification application constitute negligent misrepresentation. Again, the written evidence put forth by Plaintiff on this issue says the opposite. The November 30, 2010[88] letter sets out the consequences of Plaintiff's failure to make timely payments.

Further, "[t]he economic loss doctrine has been applied consistently to bar claims for negligence and other tort claims when the parties' relationship and its attendant duties arise from a contract."[89] Plaintiff alleges that he suffered severe mental anguish and emotional distress, loss

---

[84] Dkt. 13-5.

[85] *Biggers*, 767 F. Supp. 2d at 734.

[86] *Fankhauser v. Fannie Mae*, No. 4:10-cv-274, 2011 WL 1630193, at *7 (E.D. Tex. Mar. 20, 2011), *adopted by*, 2011 WL 1630177 (E.D. Tex. Apr. 29, 2011).

[87] *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 342 (5th Cir. 2012) (internal quotation marks and citations omitted).

[88] Dkt. 13-5.

[89] *Stapp v. Bank of Am., N.A.*, No. 4:11-cv-203, 2012 WL 3853440, at * 5 (E.D. Tex. Sep. 5, 2012, *adopted by*, 2012 WL 4502426 (E.D. Tex. Sep. 28, 2012).

of credit, damage to credit reputation, loss of property, and loss of time spent, in addition to his damages as a result of the contract. But Plaintiff's tort claim for negligent misrepresentation arises from the contract between the parties.[90] To recover for a claim of negligent misrepresentation, Plaintiff must show an injury independent from the subject matter of the contract, and Plaintiff has not put forth any evidence that would create a genuine issue of material fact on this issue. Plaintiff's alleged "injuries are in no way independent of the subject matter of the deed of trust or note" and the parties' relationship thereunder.[91] Indeed, but for the obligations under and the relationship created under the Deed of Trust and Note, Plaintiff would not have spent the time he purportedly did spend corresponding about his mortgage payments, nor would his credit have been affected by the foreclosure.[92] Accordingly, Defendants' motion for summary judgment on Plaintiff's negligent misrepresentation and gross negligence claims is **GRANTED**.

### h.  Suit to Quiet Title and Trespass to Try Title

"To prevail in a trespass-to-try title action, Plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned."[93] "The pleading rules are detailed and formal, and require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title."[94]

---

[90] *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625-26 (N.D. Tex. 2011)
[91] *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 634 (N.D. Tex. 2010).
[92] *See Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-cv-2414-B, 2012 WL 555155, at *6 (N.D. Tex. Feb. 21, 2012).
[93] *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004).
[94] *Id.*

A suit to quiet title is an equitable remedy to clarify ownership by removing clouds on the title.[95] To establish a claim for suit to quiet title, plaintiffs must show the following: (1) an interest in a specific property; (2) that title to the property is affected by a claim by the defendant; and (3) that the claim, although facially valid, is invalid or unenforceable.[96] An adverse claim, to constitute a cloud on the title removable by the court, must be one that is valid on its face but is proved by extrinsic evidence to be invalid or unenforceable.[97]

Because Plaintiff has not put forth any evidence that would create a genuine dispute as to a material fact on his substantive claims that would give him a superior title to the property, Plaintiff's suit to quiet title and claim for trespass to try title must fail, and Defendants' motion for summary judgment on these claims is **GRANTED**.

### i.   Specific Performance, Malice, Declaratory Relief, and Accounting

Plaintiff seeks the remedies of a declaratory judgment, specific performance, exemplary damages for malice, and an accounting. Because the court has granted summary judgment to Defendants on all of Plaintiff's claims, Plaintiff is not entitled to any damages or equitable remedies.

---

[95] *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007).
[96] *See Rhodes v. Wells Fargo Bank, N.A.*, Civil Action No. 3:10-cv-02347-L, 2012 WL 5363424, at *34 (N.D. Tex. Oct. 31, 2012).
[97] *See id.*

## V.    CONCLUSION

Defendants' Motion for Summary Judgment (Dkt. 12) is **GRANTED**. Defendants' Amended Motion to Exclude Expert (Dkt. 25), Plaintiff's Motion in Limine (Dkt. 31), and Defendants' Motion in Limine (Dkt. 32) are **DENIED as MOOT**.

IT IS SO ORDERED.

**SIGNED this the 30th day of September, 2013.**

_____

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE